is case number 415-0149, the people of the state of Illinois v. Marlone Pendleton. And for the appellant, we have Ms. Horner. And for the appellee, Mr. Manchin. You may proceed, counsel. Thank you. Good morning. May it please the court, counsel? Oh, I'm sorry. I need to say one more thing. We're missing someone. Justice Connect is also on this panel. However, he is unable to be here today. He will still be a panel member. He will listen to the recording of oral argument. And we will conference following that. But he will not be joining us today. Thank you. Make sure her time doesn't start until now. May it please the court. My name is Amanda Horner from the State Appellate Defender's Office. And I'm going to be taking over the case for oral argument today for my colleague. Today, I'm representing Mr. Marlone Pendleton and his appeal from the trial court's denial of a successive post-conviction petition. Your Honor, in its brief, the state doesn't really contest that Mr. Pendleton suffered prejudice, merely that he cannot meet cause under the standards set out by the Illinois Supreme Court. More importantly, the state doesn't really disagree with Mr. Pendleton about the nature of the constitutional violation that occurred in the trial court below, or whether the trial court was, or whether the case was closely balanced in the trial court. So really, Your Honors, the question before this court is whether Mr. Pendleton can meet cause based on sort of three objective factors that come together at one time. The egregious nature of the error in this case, a closely balanced case where we can no longer have faith in the verdict, and then a pervasive level of ineffective assistance and counsel on a number of levels. Because the error in this case was so pervasive in the trial court, and because we can no longer have confidence in the verdict, the circuit court erred by denying Mr. Pendleton's post-conviction, or leave to file successive post-conviction petition, where he also alleged multiple levels of ineffective assistance of counsel. To understand this case better, it's really important to understand what actually happened at the trial court level, and the egregious nature of the Doyle violation that occurred there. But counsel, this case hinges on whether or not he can show cause, because he has to show cause and prejudice. So what is the objective factor that impeded your client from raising this claim? Absolutely, Your Honor. To argue, I would submit that there are three factors that I just said that come together. First, Mr. Pendleton received ineffective assistance of counsel on a number of levels. And I understand that People v. Evans in the Illinois Supreme Court has said, look, you know, a lack of knowledge of But that was dealing with a statutory factor like MSR. And here, Mr. Pendleton has, and again, an egregious error when you look at the facts of the case. It's tough to deny what happened at the trial court below, and whether that case was closely balanced given the jury's verdict. But Mr. Pendleton has an error that was admissible, and then by direct appellate counsel. Does the evidence limit its holding to statutory facts? It does not limit its holding, but it was speaking directly to, in that particular case, a client who did not know that MSR was a point, or was part of his sentence. But Your Honor, this case is unique. Certainly, Mr. Pendleton is not arguing that every time a defendant says, well, I didn't know what the law was, that that manifests itself as cause under the cause and prejudice test. Do you have a case that says, in circumstances such as those here, that we should carve out some type of exception? No. There is no case that exists. For Your Honors, to allow this to go forward is, quite frankly, a miscarriage of justice. The justice system has that this was a consensual encounter, and we have the state, or we have trial counsel, who had him confirm on the stand that he did not speak to police, that he remained silent. We have the state who cross-examined him at length about that. We then have the state calling a rebuttal witness to rebut what, I'm still not sure, to say that, again, Mr. Pendleton wouldn't speak to police. And we have a 10-minute video that's played for the jury where Mr. Pendleton refuses to speak to the police. And if that's not enough, we have the prosecutor then arguing, and closing arguments twice, that we should infer from Mr. Pendleton's that he is guilty of this crime. That he is lying to the jury to match up physical evidence. So what was so blatantly obvious to you, somehow was sufficiently obscure, was to be missed by all of these previous counsels? Your Honor, yes, I think that's right. And not just to me, to other people that have looked at the record since that post-conviction petition. Mr. Barnes obviously raised the issue. The record indicates that another attorney told Mr. Pendleton about the issue after he had already filed a post-conviction petition. But essentially, his direct appeal counsel brought this out in front of the jury. And the state sort of tacked on to that. And we can say that that was perhaps over for minutes in front of the jury, where the jury heard repeatedly, Mr. Pendleton refused to speak to police. Mr. Pendleton refused to speak to police. He also said why? Well, he actually said because he didn't trust them. Right? He didn't trust the police. So how do we know this wasn't a tactic that the defense counsel and the defendant had come up with? They wanted to get in front of the jury the fact that the defendant thought that the police would change his words, that he didn't trust them, and that they were maybe hoping that that could carry some weight with the jury. Your Honor, with respect, I think that's unreasonable given the way that this worked out at trial. First, we know that under the Supreme Court's ruling in Dole v. Ohio in the Illinois Supreme Court, that that should objectively not have been allowed to be heard by the jury. And even if trial courts, or even if defense counsel's strategy was to be like, well, he didn't trust police, there was no strategy that would have then had the jury watch a 10-minute video where the police over and over repeated the details of the crime and sort of postulated about what they thought happened, where he's sort of refusing to speak to police. And that would never have been allowed because that was called in as a rebuttal witness when Mr. Pendleton readily admitted he refused to speak to police. And certainly, the state's argument, some of which was just not true, at one point they argued that Mr. Pendleton said he lied to police, which he doesn't. The record doesn't show that. Why would that also have ever been objectively reasonable to allow the state to argue to the jury, right before they went into deliberations, that we can't believe Mr. Pendleton's story because he didn't tell the truth to police, he had to make up something to go with that DNA evidence. All of that is objectively unreasonable. And even if we assume that, hey, he wanted to get in front of the jury, he didn't trust the police, everything after that point should have been objected to or there should have been some effort to exclude it. And quite frankly, there was no effort made. And then you also consider that the jury directly repudiated the state's theory of the case and directly repudiated most of the complainant's story. She testified that she was gang raped by these five individuals. And not only did, after eight and a half hours of deliberations, and after a prim instruction had to be given, and after we had to call the jurors in individually and poll them, they found all four of the co-defendants not guilty. So they repudiated that part of the story, but they took it one step further. She testified that she was attacked by all five people, that this was a gang rape. She never testified it was an individual one-on-one. They found that Mr. Pendleton was guilty, but it was not a gang rape. They found him not guilty of the instruction that says he acted in concert with other people. In other words, every single thing that she said, they directly came back against in their factual findings. And the only difference here is that, yes, his DNA was present. But the last thing the jury heard when they went in there was that, look, he has DNA present. He refused to speak to police if this was a consensual encounter. Why didn't he tell police that in the first place? Counsel, I wonder, does this court have the authority to carve out this exception that you're asking us to carve out, given that this is the appellate court? Your Honor, I don't even know if I would classify it as an exception, Your Honor. Well, okay, we know that Pitsenbarger says that you demonstrate a miscarriage of justice by showing actual innocence. We know that in People v. Brown, the fundamental miscarriage of justice exception has been limited to claims of actual innocence. And you have to show cause. And I would again submit to you, Your Honors, that Mr. Pendleton has done that, both by showing the error below, and again, the state doesn't contest that, and then the cause itself was both the error in combination with the multiple levels of ineffective assistance of counsel. And, you know, the state argues in its brief that, you know, Mr. Pendleton could have went and hired private counsel, which is its own issue, I suppose, under, you know, the equal protection, given that he's an indigent client, but that he could have found this by himself. But it's difficult to imagine that defense counsel in the state, and even appellate counsel, he had appellate counsel from the State Appellate Defender's Office, whose only job it is to sort of review these criminal cases and find these errors, and each one of those was not able to do that. Well, counsel, I mean, you agree that there is no claim for actual innocence, right? I agree there is no claim for actual innocence. Okay. And as to his declining to talk to the police, I guess in reviewing this case, I kind of had a different take on it. I think that it's pretty common knowledge that you don't have to talk to the police, and, you know, they're not supposed to use that against you. I mean, you've got all these crime shows on TV, and I think that's pretty well known. So I do have to wonder about what Justice DeArmond indicated earlier about perhaps this was a strategy, that, look, I'm a good guy, I'm open, I, you know, I told him up front, I don't trust you, and I know you're going to twist my words, so that's why I'm not talking. Well, first, I agree that the right to remain silent is something that we're all pretty commonly familiar with. Certainly, pop culture and television is taking care of that for us. The fact that right cannot be used against you, however, what that actually means, you know, I don't think that is so common knowledge, that you have the right to remain silent is true. But I think what Miranda tells us is you have the right to remain silent, and anything you say will be used against you. Not that if you're silent, we're also going to use that in a court of law to infer your guilt, right? So I disagree with the idea that it's perhaps in the legal community it should be common knowledge, but to a 19-year-old who's been arrested in a case like this, I'm not certain that it would be common knowledge, especially given that his own counsel brought that out to start with. And again, I come back to the idea that yes, his counsel was the one that brought this out, but it's tough to imagine how this was a strategy, and if it was a strategy, it went horribly wrong, and at any point in there, he should have stopped that sort of mushroom cloud. But to agree, he knew basically as soon as it occurred that it had happened, and that he potentially had a claim if he recognized it anyway. If he could recognize it, but again, he's a 19-year-old who's relying on appointed counsel, and we know that appointed counsel never indicated to him that this was an issue. He says that in his petition. And again, Your Honor, in terms of the actual underlying merit, Mr. Pendleton's not asking this court to give him a new trial at this point. All he's asking is that he be allowed to docket his petition so that he can further these claims. So if, for example, trial court's like, it was a strategy, we talked about it beforehand, even though Mr. Pendleton doesn't say that in his petition, but let's suppose that's true. He can testify about it in an evidentiary hearing. We're not asking this court to undo this guilty verdict and start all over. We're merely asking that Mr. Pendleton be allowed his day in court to be able to go over these issues. And right now, the pleadings are taking this true, and he said he didn't know. This was the first time he found out about it, and the moment he found out about it, he brought it up. And it's also interesting that if we assume that even in the legal community, perhaps counsel should have known. But if you're a defendant, and your counsel asks you a question, there's sort of a presumption that that's an appropriate question. And when appellate counsel tells you, these are the issues I can raise, a sentencing issue, by the way, nothing that challenged the actual conviction, then you trust that counsel knows what they're talking about. And really, the post-conviction process is meant to bring up factual questions. Defendants frequently know if counsel didn't interview a witness, or counsel didn't present an alibi defense. But this issue is much more nuanced than that. Because of the familiarity of the right to remain silent, that sort of gives it all the more credence that he would have not necessarily realized that talking about that right in front of the jury was a problem, Your Honor. The other thing is, as this error is unfolding in front of the jury, it's pretty difficult to imagine that that didn't have an impact on that jury. And given the jury's ultimate verdict, it's also sort of hard to contemplate that we're not going to be allowed to explore this further, simply because he brought it up now, instead of on his direct appeal, or in a post-conviction petition. In other words, if what we're saying today is that this issue was egregious, it was a constitutional violation, and we can tell from the jury's verdict that this case was closely balanced, and we can show that there were multiple levels of ineffective assistance of counsel, at least potentially, because again, we're talking about a post-conviction petition, not a direct appeal where he has to show that that has actually occurred. If we can say all those things, but what we're also saying is, but for you having not brought it up sooner, that's troubling, Your Honor. That seems to be a flaw in the post-conviction process and the way we look at claims. What would be the difference between this case and any case where a defendant says, I just didn't know? Well, I think the difference is that we're not talking about small error, Your Honor. We're talking about something that... How are we supposed to quantify that in a whole? Well, I think that you have to have, again... Is it consistent with that? I think, again, you have to look at those sort of three factors. There has to be some sort of egregious constitutional error. You have to have a closely balanced case. And you have to have multiple levels of counsel that didn't catch that. And you can imagine this doesn't come up very often. Certainly, we know that counsel sometimes makes mistakes with doyle violations. We see those cases. They're certainly cases that exist, but normally those are a single mention by an officer. Oh, he refused to speak with us. Or it's something that is not as pervasive, where we literally have the jury hearing from Mr. Pendleton himself, from the state, from a police officer, a 10-minute video, and then in closing arguments. So it's truly an egregious error that took place over the last part of the trial. Normally, also, you don't have a case that's this closely balanced. Not only where Mr. Pendleton has taken the stand on his own behalf, but you have another witness that supports his version of events. And then you have a jury who's come behind and said, Look, we disagree with the complainant. We don't agree with the state's theory of the case. And with the exception of this one guilty verdict, we're throwing the entire thing out. I mean, normally those two things do not occur in concert. And then finally, you normally, again, we have redundant systems here that are supposed to catch these. The appellate counsel should have caught this error. Trial counsel or the state should not have jumped on the error and made it worse. But none of those happened here. So I think in terms of what we're defining, just like actual innocence becomes a miscarriage of justice, I think that when you have an error that is this egregious, justice sort of demands that we do something about that. And again, we're not asking for full factual findings. We're not asking this court to say, We agree this error happened and we would have definitely reversed. But we're asking that he be given a chance to file this petition, have a counsel look at it, and then have an evidentiary hearing. Well, counsel, what did the Supreme Court mean when they said in People v. Brown that unless the death penalty is involved or the defendant makes a claim of actual innocence, Illinois law prohibits the defendant from raising an issue in a successive petition unless the defendant can establish cause? I will agree, Your Honor, that I think that means that without some sort of extension of the law or without carrying this forward, that if we look at the jurisprudence in the Illinois Supreme Court right now, he cannot, based solely on the law that we have, based on Evans and based on Brown, bring this. But Mr. Pendleton's arguing today that this was caused because he had these three factors that came together. And those three factors come from? Those three factors come from the case itself, what happened at trial, and then the multiple levels of ineffective assistance of counsel. So you come up with the three factors. This is not out of a case. No, Your Honor, and there's, again, and I want to be very clear, there is not case law that would necessarily support this. This is an extension of the law argument. That there was an egregious constitutional violation, that the case was so closely balanced that we cannot have faith in the verdict, and that there were multiple levels of ineffective assistance of counsel. Essentially, Your Honor, what we're arguing is that had Mr. Pendleton just raised this issue sooner, our faith in the verdict would have probably been so low he would have received a new trial. And to deny him a chance to explore that now, because he did not have the knowledge of a licensed attorney, would be a miscarriage of justice. And Mr. Pendleton would ask that this Court reverse the trial court's ruling and remand so that he can have further additional post-conviction proceedings. Thank you, counsel. You will have additional time on rebuttal if you so desire. Mr. Manchin? May it please the Court, counsel. In this case, the trial court correctly denied the defendant's leave to file a successive petition. The statute says you have to show both cause and prejudice. And the defendant has been hammering away both in her brief and here again today as the egregious prejudice. But she simply cannot, and the defendant simply cannot, establish cause in this case. Cause is an objective factor external to the defendant that precluded him from raising the issue. This issue, this Doyle violation, is one that is on the face of the record that was available at the time of the original post-conviction petition. The defendant could have raised it in that post-conviction petition. The only reason he didn't is he says, I didn't realize I had a claim. And under Jones and Evans, which are cited in her brief, the defendant's ignorance of a claim is simply not and cannot be caused. Similarly, the defendant has been consistently changing their allegations as to what the cause was. In the defendant's initial successive petition, he says cause was, I was not aware of this one document that established the break. On his direct appeal, original brief, the cause was my ignorance of the law because this was an esoteric area of the law that nobody will ever understand. Now we have, it's an esoteric area of the law, and I have ineffective assistance of counsel of everybody that ever handled this case before. The case law has held that ineffective assistance of prior attorneys is not cause for purposes of post-conviction petitions because you take your chances. That is something not external to the defendant. That was the cases of Miller-Coleman v. Thompson, Mabel v. Thomas that are cited in my brief, that negligence or failure on the part of a previous attorney does not qualify as cause since the defendant bears the risk of negligent conduct on the part of his attorney or agent. So defendant is arguing as cause something that under the law simply cannot be cause and asking this court to carve out an exception that the Supreme Court has not recognized. As you yourself noted, the Supreme Court has held You have to have cause or prejudice unless you've established actual innocence. The Supreme Court has also said ignorance of law cannot, as a matter of law, be cause for not raising an issue in the first petition. So in order for this court to carve out the defendant's exception, this court is going to have to ignore or disregard or violate the clear holdings of the Supreme Court. And this court simply does not have that authority. The statute and the case law requires both cause and prejudice. The defendant cannot establish cause as to why he didn't raise this issue that is on the face of the record in that first petition. His only excuse is, I was not aware of it. And he now adds, I was not aware of it and everybody that handled this case before me was incompetent. Every attorney that handled this case before me was incompetent. And under the case law, neither the defendant's personal lack of knowledge as to the issue or his ignorance of the law nor ineffective assistance of prior counsel can be cause for not raising the issue in the first post-conviction petition. So the defendant simply cannot establish cause for the trial court's refusal to consider this issue as proper. And I will stand on my brief with respect to the constitutionality of the statute issue that is raised by the defendant with the exception of saying that if this court was to carve out an exception for egregious, overwhelming, ineffective assistance of counsel type thing, we have just done away with the cause of prejudice. Because in every single case, the defendant is going to be arguing, this is an egregious thing, my prior attorney was ineffective, so we have just eliminated the cause prong of the statute. And I submit that that is improper. Counsel, do you think we should avoid getting into the constitutional issue? Oh, certainly. The Supreme Court has held many times that the appellate court should avoid the constitutional issues if they can. And has scolded the courts below for getting into the constitutional issues when they don't need to. So I would suggest you don't need to get into that. Just simply say, this defendant cannot show cause, and based upon that alone, we don't need to go any further. All right. Thank you, counsel. Any rebuttal, Ms. Horner? Yes, Your Honor, just one point. The state sort of said that Mr. Pendleton has claimed his reasoning for why he didn't bring up this sooner. But that's actually not accurate. He identified in the post-conviction petition, or the motion for leave to file the post-conviction petition, that he did not bring it up until a successive post-conviction counsel informed him of it. And that's on 385 in the record. And more importantly, he attached the letter from, or at least part of the letter from that counsel, informing him of that. And then in terms of addressing the constitutionality, I would disagree. I think this court does have to address the constitutionality. Now, if you can decide it on other grounds, say there's no cause in prejudice, that's fine. But additionally, he's argued that if there is no cause in prejudice, that this violates procedural due process because it's a miscarriage of justice. And I think that that is a separate attack. And the state has argued that, you know, this was unclear whether this is a facial or substantive, you know, a facial or as-applied challenge, but it's a procedural due process challenge. And Mr. Pendleton will rely on his briefs for the merits of that, under those three factors laid out in Matthews, that when there is an egregious error like this, it is a miscarriage of justice not to allow that petition to be filed, and that is an alternate ground. Thank you. Thank you very much, counsel. We'll take this matter under advisement and be in recess until the next case.